Stradley Ronon Stevens & Young, LLP
A Pennsylvania Limited Liability Partnership
By:  Stephen B. Nolan (SN8810)
     Marianne Johnston (MJ1393)
Woodland Falls Corporate Park
200 Lake Drive East, Suite 100
Cherry Hill, NJ  08002
(856) 321-2400
(856) 321-2415 (fax)

Attorneys for Defendants John J. Murphy, III, Esquire and
Stradley Ronon Stevens & Young, LLP

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| GIRARD MENOKEN,<br><br>            Plaintiff,<br><br>       v.<br><br>JOHN T. McNAMARA; JOHN J.<br>MURPHY, III, ROBERT J.<br>BARRY; GERINGER & DOLAN, LLP;<br>STRADLEY, RONON, STEVENS &<br>YOUNG, LLP, KAUFMAN & CANOLES,<br>PC; NICHOLAS C. BOZZI, DELAWARE<br>VALLEY BUSINESS FORMS, INC.<br>STANDARD BUSINESS FORMS, INC.;<br>WORKFLOW MANAGEMENT, INC., ABC<br>CORP and XYZ, LLC<br>            Defendants | CIVIL ACTION<br><br>NO.07-4610 (JMB)<br><br><br>**MEMORANDUM OF LAW OF<br>DEFENDANTS JOHN J. MURPHY,<br>III, ESQUIRE AND<br>STRADLEY RONON STEVENS &<br>YOUNG, LLP, IN SUPPORT<br>OF THEIR MOTION TO DISMISS THE<br>AMENDED COMPLAINT**<br><br>**Filed Electronically** |

Defendants John J. Murphy, III, Esquire and Stradley,

Ronon, Stevens & Young, LLP (the "Stradley Defendants")

respectfully submit this Memorandum of Law in support of their

Motion to Dismiss the Amended Complaint.

Table of Contents

Page

I.    PRELIMINARY STATEMENT ...................................... 1

II.   PROCEDURAL HISTORY ......................................... 1

III.  STATEMENT OF FACTS ......................................... 2

      A.  Menoken I ............................................ 2
      B.  Menoken II ........................................... 3
      C.  Menoken III .......................................... 6

IV.   ARGUMENT ................................................... 7

      A.  Legal Standard ....................................... 7
      B.  Plaintiff's Claims Are Time Barred. .................. 8
      C.  Claim/Issue Preclusion .............................. 14

      1.  Discovery Disputes .................................. 18
      2.  The Asset Purchase Agreement ........................ 19
      3.  Plaintiff's Representation By Legal Counsel ......... 22

V.    CONCLUSION ................................................ 24

i

## TABLE OF AUTHORITIES

<u>CASES</u>

<u>Allen v. McCurry</u>,
   449 U.S. 90 (1980) ......................................... 15

<u>Burlington No. R.R. Co. v. Hyundai Merchant Marine Co.,
   Ltd.</u>,
   63 F.3d 1227 (3$^d$ Cir. 1995) ..........................15-16

<u>Cardio Medical Assoc. v. Crozer Chester Med. Ctr.</u>,
   721 F.2d 68 (3rd Cir. 1983) ............................ 14

<u>Cetel v. Kirwan Finan. Grp., Inc.</u>,
   460 F.3d 494 (3$^d$ Cir. 2006) ..........................9-10

<u>Frierson v. St. Francis Med. Ctr.</u>,
   2007 WL 2446527 (D.N.J. August 23, 2007) ................... 9

<u>Garfield v. J.C. Nichols Real Estate</u>,
   57 F.3d 662, cert. denied 116 S.Ct. 380 (1995) ............. 14

<u>In re: Warfarin Sodium Antitrust Lit.</u>,
   214 F.3d 395 (3$^d$ Cir. 2000) .............................. 7

<u>Johnson v. Nyack Hosp.</u>,
   86 F.3d 8 (2d Cir. 1996) .................................. 13

<u>Lubrizol Corp. v. Exxon Corp.</u>,
   929 F.2d 960 (3$^d$ Cir. 1991) ............................. 16

<u>P.T.&L. Constr. Co., Inc. v. Madigan and Hyland, Inc.</u>,
   245 N.J. Super. 201 (App. Div.) .........................9-10

<u>Rider v. Commonwealth of Pa.</u>,
   850 F.2d 982 (3$^d$ Cir.) ................................. 15

<u>Sands v. McCormick</u>,
   ___ F.3d ___, 2007 WL 2701948 (3$^d$ Cir., Sept. 18, 2007) .... 7-8

<u>U.S. v. Jones</u>,
   916 F. Supp. 383 (D.N.J. 1995) ............................. 8

<u>Wheeler v. Nieves</u>,
   762 F. Supp. 617 (D.N.J. 1991) .........................15-18

L # 637336 v.4

**STATUTES**

N.J.S.A. 2A:14-1 .......................................... 8, 13

**RULES**

Fed. R. Civ. P. 11, 37 ....................................... 19

Fed. R. Civ. P. 12(b)(6) .................................. 1-2, 7

Local Rule 6.1(b) ............................................ 1

Rule 60(b) ............................................... 6, 14

Rule 60(b)(4), (5) and (6) ................................... 5

**CODES**

28 U.S.C. § 1331 ............................................. 5

28 U.S.C. § 1441 ............................................. 1

29 U.S.C. § 2601 ............................................. 2

42 U.S.C. § 12101 ............................................ 2

Civil Rights Act of 1991, 42 U.S.C. §1981a ................... 2

L # 637336 v.4

I.    <u>**PRELIMINARY STATEMENT**</u>

This case is the latest in a series of attempts by
Plaintiff to re-litigate in the Superior Court of New Jersey a
federal civil rights case filed with this Court more than 11
years ago.  The Stradley Defendants served as counsel to several
of the defendants in that earlier action.  Plaintiff cannot
possibly prevail on his claims.  This Court should put an end to
Plaintiff's long, tortured course of litigation and dismiss with
prejudice all claims against the Stradley Defendants.

II.   <u>**PROCEDURAL HISTORY**</u>

Plaintiff filed this action in the Law Division of the
Superior Court of New Jersey for Camden County on August 13,
2007.  As with predecessor litigation filed by Plaintiff in the
Superior Court of New Jersey for Bergen County in 2002, the
Stradley Defendants removed the case to this Court pursuant to
28 U.S.C. § 1441.  The Stradley Defendants contemporaneously
moved pursuant to Local Rule 6.1(b) for an automatic extension
of time to respond to the Amended Complaint no later than
October 18, 2007.  That motion was granted.  The Stradley
Defendants now move pursuant to Fed. R. Civ. P. 12(b)(6) for an
Order dismissing the Amended Complaint with prejudice.

L # 637336 v.4

## III. <u>STATEMENT OF FACTS</u>

### A.   **Menoken I**

On April 8, 1996, Plaintiff initiated a federal action
against Pemcor, Inc. and Standard Forms, Inc. ("SFI")
(hereinafter "Menoken I").  (docket entry 1, <u>Menoken v. Standard</u>
<u>Forms, Inc.</u>, U.S. Dist. Ct., D.N.J., no. 1:96-cv-1774, Ex. "A"
to the Certification of Stephen B. Nolan, Esquire).  Plaintiff
later amended his complaint in <u>Menoken I</u> to include claims
against Delaware Valley Business Forms ("DVBF") and Nicholas C.
Bozzi ("Bozzi").  (<u>Id.</u>, docket entry 29).  Defendants John J.
Murphy, III, Esquire and Stradley Ronon Stevens & Young, LLP,
were counsel to DVBF and Bozzi in <u>Menoken I</u>.  (<u>Id.</u>)

Plaintiff asserted claims in <u>Menoken I</u> seeking relief under
the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, the
Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and
the Civil Rights Act of 1991, 42 U.S.C. §1981a.  (Second Am.
Compl. in <u>Menoken I</u>, ¶ 1, Ex. "B" to Nolan Cert.)  Following
discovery and briefing by the parties, this Court dismissed
Plaintiff's claims against Bozzi and DVBF.  (<u>Menoken I</u> docket
entries 76 and 77, Ex. "A" to Nolan Cert.)

This Court permitted Plaintiff to pursue his single
remaining claim against SFI under the FMLA for an alleged
failure to re-hire.  After a bench trial on June 14, 2000, the
Court found in favor of Menoken and against SFI and awarded lost

2

wages of $27,200.  (Id., docket entry 87).  Menoken thereafter filed an appeal and SFI cross-appealed.  (Id., docket entries 92 and 95).  Following extensive briefing and oral argument, the United States Court of Appeals for the Third Circuit affirmed this Court's earlier partial dismissal of Menoken's claims and reversed the District Court's limited entry of judgment against SFI on Menoken's FMLA claim.  (Id., docket entry 114).

**B.    Menoken II**

On June 10, 2002, Plaintiff filed his second action, this time in the Law Division of the Superior Court of New Jersey for Bergen County, No. L-4967-02, captioned Girard Menoken v. John T. McNamara, et al. (hereinafter "Menoken II") (docket entry 1, Menoken v. McNamara, U.S. Dist. Ct., D.N.J., no. 1:02-cv-3341, Ex. "C" to Nolan Cert.).  The complaint in Menoken II names most of the parties and their counsel from Menoken I as defendants.

After a lengthy recitation of the same facts that were litigated in Menoken I, the complaint in Menoken II asserted causes of action for "tortious interference with prospective economic advantage" and "fraudulent concealment of material evidence."  (Compl. in Menoken II, Ex. "D" to Nolan Cert.) Those claims rested on the allegation that one or more of the defendants engaged in misconduct in Menoken I, including

1.    opposing the *pro hac vice* motion of plaintiff's sister;

3

2.   giving "untimely, improper and/or materially false responses" to discovery requests;

3.   delaying disclosure in discovery of an Asset Purchase Agreement; and

4.   making "false[] and malicious[]" arguments in their motions for summary judgment.

(the "Alleged Misconduct") (<u>Id.</u>, ¶¶ 30-35, 40-42, 64-65). Plaintiff contended that the Alleged Misconduct of the <u>Menoken I</u> defendants and/or their counsel caused this Court to enter summary judgment against Plaintiff on various claims and greatly reduced Plaintiff's recovery at trial.  <u>Id.</u>, ¶ 27. The <u>Menoken I</u> record is replete with references to the District Court's adjudication of Plaintiff's claims of the Alleged Misconduct.[1]

The Defendants in <u>Menoken II</u> timely filed a notice of removal to this Court.  This Court, *sua sponte*, directed briefing on the question of whether it had subject matter jurisdiction.  (<u>Menoken II</u> docket entries 1, 7, Ex. "C" to Nolan Cert.)  After considering the papers filed by all parties, this

---

[1]  <u>Menoken I</u> docket entries 13-14, 16-17, 30, 32-33, 46, 48, 52, 54, 60, 85 (adjudicating various discovery issues), Ex. "A" to Nolan Cert.; excerpt from tr. 6/12/2000 proceedings in <u>Menoken I</u> at pp. 22-23, 28, 31-32 (noting that "Asset Purchase Agreement and all of the other facts in the case" available to Plaintiff's counsel for "more than a year" before trial and finding no prejudice relating to alleged failure to make agreement available in discovery, Ex. "I" to Nolan Cert.; <u>Menoken I</u> docket entries 14, 17 (noting appearance of Eze I. Eze, Esquire for Plaintiff), 41, 51 (noting appearance of Harvey C. Johnson, Esquire for Plaintiff), and 44, 76 (noting appearance of Cassandra Menoken, Esquire for Plaintiff), Ex. "A" to Nolan Cert.

4

Court concluded on September 26, 2002, that subject matter jurisdiction was proper pursuant to 28 U.S.C. § 1331.  (Id., docket entries 15-16).  Shortly thereafter, on October 11, 2002, Plaintiff voluntarily dismissed Menoken II without prejudice.  (Id., docket entry 17).

Although he never reinstated his action, Plaintiff sought relief pursuant to Rule 60(b)(4), (5) and (6) from this Court's September 26, 2002, decision upholding jurisdiction.  (Id., docket entry 18).  By Order entered February 23, 2003, the District Court denied Plaintiff's motion.  (Id., docket entries 24-25).  At oral argument of Plaintiff's motion, this Court confirmed that Plaintiff's voluntary dismissal of Menoken II would remain in effect unless the Court "hear[d] definitively from the parties" to the contrary.  (Tr. 2/26/2003 hearing, Menoken II, pp. 23-24, Ex. "E" to Nolan Cert.).  Plaintiff filed an appeal of the Court's February 26, 2003, Order sustaining its September 26, 2002, Order that the Court had subject matter jurisdiction.  (Menoken II, docket entry 26, Ex. "C" to Nolan Cert.)  On May 6, 2004, the Third Circuit Court of Appeals granted defendant/appellee's motion to dismiss the appeal.  (Id., docket entry 31).

Almost twenty nine months after dismissing his case, Plaintiff moved this Court on March 7, 2005, to vacate his voluntary dismissal of the complaint in Menoken II.  (Id.,

5

L # 637336 v.4

docket entry 32).  After briefing, this Court denied Plaintiff's

motion, noting that:

> Plaintiff's counsel's second conscious election to
> keep [the] case in the status of voluntary dismissal,
> even after this Court clarified the procedural issues
> regarding jurisdiction and removal, again leads to the
> conclusion that no just cause exists for the two
> further years of delay before filing the … Rule 60(b)
> motion.

(Order dated October 28, 2005 in <u>Menoken II</u>, p. 3, Ex. "F" to

Nolan Cert.; <u>Menoken II</u> docket entry 45, Ex. "D" to Nolan Cert.)

The Court concluded that Plaintiff's request for relief was not

timely because <u>Menoken II</u>:

> pertained to alleged misconduct in … <u>Menoken I</u> … which
> had been filed in 1996, alleging causes of action in
> 1995 and 1996.  The <u>Menoken I</u> case was adjudicated and
> appealed in 2000, and the appeal was decided in 2001.
> **To say that Plaintiff's claims in Menoken II which
> were voluntarily dismissed in 2002 have become stale
> would be an understatement.**

(Order dated October 28, 2005 in <u>Menoken II</u>, at 3-4 (emphasis

added), Ex. "F" to Nolan Cert.)

### C.    Menoken III

Almost two years after this Court denied Plaintiff's motion

to reinstate his case, Plaintiff, ostensibly acting *pro se*,

filed a complaint with the Law Division of the Superior Court of

New Jersey for Camden County, No. L-4209-07.  ("<u>Menoken III</u>").

(docket entry 1, <u>Menoken v. McNamara</u>, U.S. Dist. Ct., D.N.J.,

no. 1:07-cv-4610, Ex. "G" to Nolan Cert.)  The Amended Complaint

in <u>Menoken III</u> names the same parties, makes virtually the same

L # 637336 v.4

claims, and contains allegations identical in all material respects to the Complaint Plaintiff filed and dismissed in Menoken II.  (Amended Complaint in Menoken III, Ex. "H" to Nolan Cert.)[2]

The Stradley Defendants timely removed Menoken III to this Court on September 26, 2007.  (Menoken III docket entry 1, Exhibit "G" to Nolan Cert.)  The Stradley Defendants now move this Court pursuant to Fed. R. Civ. P. 12(b)(6) for an Order dismissing with prejudice all claims asserted against them in this matter.

## IV.   ARGUMENT

### A.   Legal Standard

The Court may dismiss a complaint for failure to state a claim where it appears that no relief could be granted under any set of facts consistent with the allegations pled.  In re: Warfarin Sodium Antitrust Lit., 214 F.3d 395, 397 (3$^d$ Cir. 2000)(citing Trump Hotels and Casino Resorts, Inc., 140 F.3d 478, 483 (3$^d$ Cir. 1998)).  In "ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits and matters of public record."  Sands v. McCormick, ___ F.3d ___, 2007 WL 2701948, *4 (3$^d$ Cir., Sept. 18, 2007) (citing Pension

---

[2] The Stradley Defendants received a copy of an Amended Complaint in Menoken III on September 18, 2007.  Aside from adding an alleged successor to one of the defendants and two fictitious entities as defendants, the Amended Complaint makes no changes to the factual allegations or claims in the initial complaint.

7

Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d
1192, 1196 (3$^d$ Cir. 1993)).  "Judicial proceedings constitute
public records and . . . courts may take judicial notice of
another court's opinions."  Id. (citing Southern Cross Overseas
Agency v. Wah Kwong Shipping Group, 181 F.3d 410, 426 (3$^d$ Cir.
1999)).  Accordingly, in considering the Stradley Defendants'
Motion to Dismiss, this Court appropriately examines Plaintiffs'
Amended Complaint and matters of public record – in particular
the proceedings in Menoken I and Menoken II – relating to the
allegations set forth therein.

**B.   Plaintiff's Claims Are Time-Barred**

The conduct and harm alleged in the Amended Complaint took
place more than six years ago.  For this reason, Plaintiff's
claims are barred by the statute of limitations.

In New Jersey, "[e]very action at law . . . for any
tortious injury to real or personal property, for taking,
detaining, or converting personal property, . . . for any
tortious injury to the rights of another not stated in sections
[N.J.S.A.] 2A:14-2 and 2A:14-3 . . . shall be commenced within 6
years next after the cause of any such action shall have
accrued."  N.J.S.A. 2A:14-1.[3]  Statutes of limitation are

---

[3] The statute of limitations defense may be raised by way of
a motion to dismiss for failure to state a claim upon which
relief can be granted where "''the time alleged in the statement
of [] claim shows the cause of action''" is time barred.  U.S.

L # 637336 v.4

"designed to stimulate litigants to prosecute their causes diligently and 'to spare the courts from litigation of stale claims'". P.T.&L. Constr. Co., Inc. v. Madigan and Hyland, Inc., 245 N.J. Super. 201, 206 (App. Div.) (quoting Farrell v. Votator Div. of Chemtron Corp., 62 N.J. 111, 115 (1973); Rosenau v. City of New Brunswick, 51 N.J. 130, 136 (1968)), certif. denied, 126 N.J. 330 (1991).   Periods of limitation "penalize dilatoriness and serve as measures of repose." Id. (citing Rosenau, 51 N.J. at 136-137 (quoting Wood v. Carpenter, 101 U.S. 135, 139 (1879)).

New Jersey's discovery rule starts the running of the statute of limitations when "(1) the plaintiff has suffered actual injury; [and] (2) the plaintiff knows that the injury is due to the fault of another." Cetel v. Kirwan Finan. Grp., Inc., 460 F.3d 494, 513 ($3^d$ Cir. 2006).   The "injured party's knowledge need not be "impeccable" nor does the exact cause of injury need to be known. P.T.&L. Constr., 245 N.J. Super. at 209 (citing Torcon, Inc. v. Alexian Bros. Hosp., 205 N.J. Super.

---

v. Jones, 916 F. Supp. 383, 386 (D.N.J. 1995) (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 ($3^d$ Cir. 1978) (quoting Hanna v. United States Veterans' Admin. Hosp., 514 F.2d 1092, 1094 ($3^d$ Cir. 1975)) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 ($3^d$ Cir. 1994); Davis v. Grusemeyer, 996 F.2d 617, 622 ($3^d$ Cir. 1993)).   See Frierson v. St. Francis Med. Ctr., 2007 WL 2446527 (D.N.J. August 23, 2007). Thus, reference to Plaintiff's Amended Complaint and the matters of public record referenced therein is appropriate to determine whether the claims in the Amended Complaint are time barred.

9

428, 435 (Ch. 1985), aff'd, 209 N.J. Super. 239 (App. Div.),
certif. denied, 104 N.J. 440 (1986)).  The injured party also
need not have knowledge of the extent of his injury before the
statute begins to run.  Id.

The Cetel case involved physicians who claimed that the
defendants misrepresented the potential tax benefits of a
particular employee benefit association.  Although the Internal
Revenue Service advised the Plaintiff physicians in 1995 of its
position that the arrangement did not comply with the tax code,
the attorney for several of the defendants assured plaintiffs
that the IRS had taken an incorrect position.  Id. at 502.  The
United States Tax Court upheld the position of the IRS in 2000.
Id.  In considering whether those plaintiffs' state law claims
were barred by the statute of limitations, the Court held that
"despite plaintiffs' assertions to the contrary, by August 1995
a reasonable person exercising ordinary diligence would have
known both that they had been injured and that the injury was
due to the fault of defendants." Id. at 513.

The same rule applies here.  Plaintiff's Amended Complaint
asserts claims for "Interference with Prospective Economic
Benefit" and "Tortious Concealment."  (Am. Compl., IV(A-B) Ex.
"H" to Nolan Cert.).  The Amended Complaint states that these
claims are grounded in the Alleged Misconduct which occurred
during the course of Menoken I.  (Id., ¶¶ 34-47).  Plaintiff

10

claims that the Alleged Misconduct caused the Court to make "adverse summary judgment rulings" that deprived him of, what he claims, would have been "a jury award in excess of $300,000." (Id., ¶¶ 50-51, 79, 81).

The latest dates of the Defendants' Alleged Misconduct and of the occurrence of Plaintiff's supposed harm are indisputable. First, with respect to opposing the pro hac vice motion of Plaintiff's sister, the record reflects that his sister Cassandra Menoken participated in a pretrial conference on June 12, 2000 and had been admitted pro hac vice six months earlier, on December 6, 1999. (Tr. 6/12/2000 conference in Menoken I, p. 19, Ex. "I", to Nolan Cert.; Menoken I docket entry 76, Dec. 6, 1999, Ex. "A" to Nolan Cert.)  Therefore, any effort by defendants to oppose Ms. Menoken's admission had to have occurred before this date.

Second, with respect to Plaintiff's allegations regarding Defendants' purported "untimely, improper and/or materially false responses" and delay in producing the Asset Purchase Agreement, Plaintiff raised his allegations regarding discovery disputes no fewer than seven times before June 2000.  (See, e.g., Menoken I., docket entry nos. 13-14, 16, 30, 46, 52, 54). The Court adjudicated all of plaintiff's discovery applications. (See, e.g., Id., entry nos. 17, 19, 32-33, 48, 60, 85).  The statute of limitations prohibits this Court from considering

11

Plaintiff's allegations of discovery abuse that accrued nearly a decade ago.

Third, on June 12, 2000, this Court addressed for at least the second time Plaintiff's complaints regarding the alleged delayed disclosure of the Asset Purchase Agreement.  On that date, the Court concluded that a copy of the document had been provided to Plaintiff on October 15, 1998, more than 19 months before trial, and made available prior to then, and concluded that Plaintiff was not harmed "in any way" by the timing of the disclosure of this agreement.  (See Tr. 6/12/2000 hearing in Menoken I, pp. 23, 31-32, Ex. "I" to Nolan Cert.)  Plaintiff cannot now be heard to complain about the timing of his receipt of a document that occurred nearly nine years ago.

Fourth, although the Amended Complaint does not specify which of the Defendants' motions for summary judgment motions contained "false[] and malicious[]" arguments nor specify which of the District Court's summary judgment Orders caused him injury, reference to the docket in Menoken I shows that the last such order was entered on December 6, 1999, and modified on December 30, 1999.  (Menoken I docket entry 77, Ex. "A" to Nolan Cert.)  Thus, Defendants made all of their summary judgment arguments and the Court entered orders based upon them nearly eight years ago.  The Menoken I docket reflects that this Court entered judgment and closed the case no later than June 16,

12

2000, seven years, one month, and twenty eight days before Plaintiff filed his complaint in Menoken III.

Even if, arguendo, Plaintiff could prove that the Stradley Defendants engaged in any of the Alleged Misconduct that purportedly resulted in a summary judgment order being entered, it is plain that Plaintiff's claim could not possibly have accrued later than June 16, 2000, when Plaintiff - represented by Attorney Menoken - already had enunciated to the Court her position that Defendants' failure to make available the Asset Purchase Agreement and other Alleged Misconduct had damaged her client's case and the Court entered final judgment against Plaintiff on virtually all of his claims.[4]  (Menoken I docket entries 87-88, Ex. "A" to Nolan Cert.)  Plaintiff waited until August 13, 2007 -- seven years, one month, twenty eight days later -- to file his complaint in Menoken III.  Consequently, Plaintiff's claims against the Stradley Defendants are barred by N.J.S.A. 2A:14-1.[5]

---

[4]  The record actually suggests that Plaintiff or his attorneys were aware of the conduct ascribed to the Stradley Defendants prior to this point but, for purposes of this Motion, such awareness certainly was crystallized no later than June 16, 2000.

[5]  Plaintiff's filing of Menoken II which Plaintiff voluntarily dismissed on October 11, 2002 does not toll the statute of limitations.  A voluntarily dismissed action, even without prejudice, does not toll the statute of limitations.  Johnson v. Nyack Hosp., 86 F.3d 8 (2d Cir. 1996). This is so because the dismissal has the effect of rendering the suit as though

This Court was correct two years ago when it noted, albeit in the context of Plaintiff's Rule 60(b) motion to vacate his voluntary dismissal, that characterizing Plaintiff's claims as "stale would be an understatement."  (Order, at p.4, Menoken I, (October 28, 2005), Ex. "F" to Nolan Cert.)  The time during which Plaintiff could properly assert his claims has long passed.  This Court must reject Plaintiff's attempt to burden this Court and the parties with yet another iteration of his complaint.  The Stradley Defendants respectfully request that the Court grant their motion to dismiss all claims against them.

## C.   Claim/Issue Preclusion

Plaintiff is apparently unaware that once an issue is presented to and decided by the Court, a litigant cannot repackage that issue and present it again.  "The federal courts have traditionally adhered to the related doctrines of *res*

---

it had never been filed. Garfield v. J.C. Nichols Real Estate, 57 F.3d 662, cert. denied 116 S.Ct. 380 (1995); Cardio Medical Assoc. v. Crozer Chester Med. Ctr., 721 F.2d 68, 77 (3rd Cir. 1983) ("It is a well recognized principle that a statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice.")  Even if the period during which Menoken II was pending could be considered for tolling purposes, that case was only pending from June 10, 2002 until October 11, 2002 – four months and one day. Subtracting this period from the passage of time between the entry of judgment in Menoken I (June 12, 2000) and the filing of Menoken III (August 13, 2007) still leaves the passage of six years, nine months, twenty seven days, well in excess of the limitations period.

L # 637336 v.4

*judicata* and collateral estoppel." Allen v. McCurry, 449 U.S. 90, 94 (1980). "The doctrines generally prohibit relitigation of claims and issues" decided in an earlier proceeding. Wheeler v. Nieves, 762 F. Supp. 617, 624 (D.N.J. 1991). Claim preclusion "precludes parties or their privies whose action has reached a final judgment on the merits from relitigating issues 'that were or could have been raised in that action.'" Rider v. Commonwealth of Pa., 850 F.2d 982, 988 (3$^d$ Cir.) (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)), certif. denied, 488 U.S. 993 (1988). In contrast, the principle of issue preclusion prevents "the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted." Wheeler, 762 F. Supp. at 625 (quoting Melikian v. Corradetti, 791 F.2d 274, 277 (3d Cir. 1986) (internal citations omitted) cert. denied, 498 U.S. 821 reh'g denied, 498 U.S. 1017 (1990)).

The doctrine of issue preclusion derives from the simple principle that 'later courts should honor the first actual decision of a matter that has been actually litigated. . . .[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Burlington No. R.R. Co. v. Hyundai Merchant Marine Co., Ltd., 63 F.3d 1227,

15

1231 (3ᵈ Cir. 1995) (citing Montana v. United States, 440 U.S.

147, 153 (1979)).  A party establishes issue preclusion where:

> (1)  the issue sought to be precluded [is] the same as
>      that involved in the prior action;
>
> (2)  that issue [was] actually litigated;
>
> (3)  that it [was] determined by a final and valid
>      judgment; and
>
> (4)  the determination [was] essential to the final
>      judgment.

Id. at 1232 (quoting In re: Graham, 973 F.2d 1089, 1097 (3ᵈ Cir.

1992)).

The "[f]ederal law of claim preclusion requires a

defendant to demonstrate that there has been:

> (5)  a final judgment on the merits in a prior suit
>      involving
>
> (6)  the same parties or their privies and
>
> (1)  a subsequent suit based upon the same cause of
>      action."

Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3ᵈ Cir. 1991)

(citing United States v. Athlone Indus., Inc., 746 F.2d 977, 983

(3ᵈ Cir. 1984)).

The plaintiff in Wheeler brought a civil action arising

out of alleged misconduct of two police officers prior to his

arrest and during trial.  Wheeler, 762 F. Supp. at 619.  The

defendant moved the Court to dismiss the Complaint because the

plaintiff had pressed the same arguments in the context of his

criminal case and lost.  Dismissing Wheeler's complaint in its

entirety, the District Court concluded that his claims were

16

barred under principles of res judicata and collateral estoppel. In considering res judicata, the Court concluded that there was a "sufficient identity of causes of action and parties to hold the prior criminal proceedings preclusive" of Wheeler's subsequently filed civil action. Id. at 625. While the parties to the criminal case were not identical to those in the civil case, there was a sufficient "identity of functions and interests" between the parties in the respective cases to apply the doctrine. Id. Further, "the wrongs alleged by Wheeler in the ...civil action were also at issue in the prior criminal proceeding [in that] …the alleged illegal conduct of the [police officers] constituted a defense for Wheeler" and was either raised by him in the prior criminal proceedings or should have been. Id. In addition, the testimony and evidence upon which Wheeler relied in the civil case was the same as that he submitted or should have submitted in the prior criminal proceeding." Id. The District Court reached the same conclusion when analyzing the claim under the principle of issue preclusion. Id. Wheeler actually litigated in the criminal case the issues asserted in his later civil action and, as a result, he was convicted. Id. at 626-627. Granting the defendants' motion to dismiss, the Court noted "to decide otherwise would allow Wheeler a second opportunity to litigate claims which were either litigated in the prior proceedings or

17

which he had every incentive to raise in those proceedings but which he waived.  Wheeler is not entitled to 'two bites at the apple.'"  Id. at 627.

The result must be the same here.  This Court expressly addressed in Menoken I, the Alleged Misconduct that Plaintiff identifies as the factual basis for his claims in Menoken II and, now, Menoken III.  The Plaintiff sues the same parties or their privies.  Finally, Plaintiff seeks in Menoken III to recover the verdict that he claims he would have recovered in Menoken I, absent the defendants' supposed misconduct.  At bottom, Mr. Menoken wants a "second bite at the apple."  This Court should not re-visit its decisions regarding the Alleged Misconduct.

### 1. *Discovery Disputes*

The Amended Complaint in Menoken III alleges that defendants and their counsel provided "untimely, improper and/or materially false and misleading" responses to Plaintiff's discovery requests in Menoken I.  (Am. Compl., ¶ 35).  However, Plaintiff, who was represented by legal counsel at various times throughout the litigation, was fully cognizant of those alleged deficiencies and actually moved the Court for relief in that regard.  Between the time Plaintiff filed his initial complaint in 1996 and this Court's trial judgment in June 2000, Plaintiff moved the Court for orders regarding discovery matters on

18

several occasions.  (See, e.g., id., docket entry nos. 13-14,
16, 30, 46, 52, 54).  The Court adjudicated all of plaintiff's
discovery applications.  (See, e.g., id., entry nos. 17, 19, 32-
33, 48, 60, 85).  If Plaintiff believed that the parties or
counsel were abusing discovery in Menoken I, he certainly had a
mechanism to and, indeed did, seek redress with the Court.  Fed.
R. Civ. P. 11, 37.  If the Plaintiff thought the District Court
rulings in Menoken I were erroneous and resulted in an incorrect
judgment, his proper course was to assert exceptions in his
appeal to the Third Circuit Court of Appeals.  While the subject
of the Asset Purchase Agreement and counsel's conduct was
referenced in the Menoken I appeal, it did not change the
result.  The Court should reject Plaintiff's attempt to raise
these issues again a decade later.

       2.   *The Asset Purchase Agreement*

        The central discovery dispute described in Menoken III
involved an asset purchase agreement that Plaintiff contends was
wrongfully withheld from production in discovery.  That
discovery dispute was fully litigated before this Court in
Menoken I.  For example, on November 21, 1997, this Court denied
Plaintiff's appeal of the Magistrate Judge Kugler's Order
denying Plaintiff's Motion to Compel Discovery, including the
Asset Purchase Agreement.  (Menoken I docket entry 48, Ex. "A"
to Nolan Cert.)  Further, Mr. Menoken's attorney openly

19

discussed with this Court in Menoken I the question of counsels'
alleged misconduct with regard to the production of this
document in discovery.

Plaintiff's counsel raised the issue with the Court
shortly before trial at a June 12, 2000 conference.  In short,
this Court concluded that SFI had made the agreement available
for inspection by Plaintiff's attorney as early as March 31,
1997, and recalled that the Court had denied Plaintiff's motion
to compel production of the document.  (See Tr. 6/12/2000
hearing in Menoken I, pp. 22-23, Exhibit "I" to Nolan Cert.; Ex.
"A" to Nolan Cert, Docket entry 101.)  The colloquy between
Attorney Menoken and this Court on the record is illustrative:

> THE COURT:    Do you know what [sic] previous counsel
> didn't take advantage to inspect the documents back in
> '97.
>
>    * * *
>
> Well, the first offer, though, had been made by SFI to
> Mr. Eze [counsel to Plaintiff].
>
> MS. MENOKEN:   That's correct, your Honor, ... the
> offer to allow him to inspect it....
>
> THE COURT:    But it [the offer] was made March 31 of
> '97.
>
> MS. MENOKEN:   It was.

(Id., p. 22).  The Court also noted that Plaintiff's motion to
compel production of the Agreement was considered and denied in
January, 1998 (Id., p. 23).

L# 637336 v.4

The Court found that a copy of the agreement had been provided to Plaintiff on October 15, 1998, more than 19 months before trial. (Id. at p. 23). The Court observed:

> THE COURT:    Would you agree the key point is you've known for one year and eight months everything that's in the Asset Purchase Agreement, that there is no restriction upon its use because it's not subject to a protective order, and that the subsequent motion practice that we've all had together in late '98, early '99, and I think again late '99, had the benefit of that entire agreement for any arguments anybody wanted to make?
>
> MS. MENOKEN:    . . . **He had it for the summary judgment, the round of summary judgment submissions we did last year, you're correct.**
>
> **And I think the record will reflect, your Honor, every single submission that plaintiff has made since 1997 has raised questions about either not having the Asset Purchase Agreement or not having it in time to make arguments that eventually plaintiff became bound by in terms of factual findings by the Court.**

(Id., p. 28 (emphasis added)).

The Court went on to conclude that the Defendants had not done anything improper with regard to Plaintiff's requests for the Asset Purchase Agreement and, further, that Plaintiff suffered no damage as a result of the alleged delay.

> THE COURT:    . . . And now the Court and all counsel, having the benefit for more than a year of the Asset Purchase Agreement and all of the other facts in the case . . . .   Whether SFI took too strenuous a position objecting to the full disclosure [of the agreement] or not just doesn't matter.   Even if they took that position in the end, had it turned out, if it had been litigated, not to have been justified under the discovery rules, and I don't know if that's so or not, that's the stuff discovery

disputes are made of, one side says a document is
protected because it contains proprietary information,
the other side says it doesn't, and the Judge rules,
in this instance the Judge didn't rule that way but
the codefendant made the disclosure.  Does it raise
questions it wasn't disclosed earlier?  Maybe.   But
are the questions answered to the Judge's satisfaction
it was SFI's good faith to disclose it without a
confidentiality agreement?  I think the answer is,
yes.  I think SFI explained what it was doing and why.
And, also, **more importantly, for justice sake I don't
find that the plaintiff was harmed in any way by not
having obtained a copy of the agreement sooner than
the plaintiff did.**

<u>Id.</u> at 28, 31-32 (emphasis added).

The record is clear that Plaintiff, through his attorney of
record, specifically raised with the Court his contention that
the Defendants or their counsel had wrongfully withheld the
Asset Purchase Agreement from discovery and, as a consequence,
impaired Plaintiff's case.  This Court heard, analyzed and ruled
on Plaintiff's complaints.[6]  It should not do so again.

### 3.    *Plaintiff's Representation By Legal Counsel*

The Amended Complaint appears to argue that defendants'
opposition to his sister's motion for admission *pro hac vice* in

---

[6]  Again, if Plaintiff believed this Court committed errors at
the June 12, 2000 pretrial conference or in deciding the
multiple discovery motions before then, he could have raised
that issue in his appeal of <u>Menoken I</u>.  Although the topic was
referenced in Plaintiff's brief, it did not result in the
Third Circuit granting Plaintiff any relief.  If anything,
Plaintiff's appeal resulted in a loss of his limited recovery
before the District Court in <u>Menoken I</u>.  Plaintiff cannot
return to this Court, yet again, to continue to churn his
complaints about supposed discovery misconduct.

L # 637336 v.4

Menoken I is a basis for his claims in Menoken III.  (Am.
Compl., ¶¶32-34).   For a number of reasons, this dispute was
fully aired before and adjudicated by the Court.   It cannot be
revisited here.

     At various times in Menoken I, plaintiff was represented by
counsel.  (Menoken I docket entry nos. 14 (Eze I. Eze, Esquire),
17, 41 (Harvey C. Johnson, Esquire), and 45, 51, 76 (Cassandra
Menoken, Esquire), Ex. "A" to Nolan Cert.; see also letter dated
April 23, 1995, from Cassandra M. Menoken to Robert J. Barry, p.
1, attached as Ex. "J" to Nolan Cert.(referencing Patricia
Darden, Esquire).   On several occasions, plaintiff's sister,
Cassandra Menoken moved the Court to appear pro hac vice.  Id.,
entry nos. 23, 26-27, 31, 34, 37, 39-40, 42, 44, 46, 48, 76.[7]
Defendants raised good faith objections to the motions given Ms.
Menoken's potentially conflicting role as a fact witness in the
case.  (See Letter from Hon. Jerome B. Simandle, U.S.D.J., dated
October 14, 1997, in Menoken I recounting history of Cassandra
Menoken's pro hac vice motions and warning attorney Menoken
about unauthorized practice of law, Ex. "K" to Nolan Cert.)   The

_____

[7] Defendants opposed these motions, partially in response to
Attorney Menoken's letter asserting "[i]n any event, at this
point in the proceedings, I have determined that I will need to
be available as a material witness (on the issue of liability as
well as relief) should it become necessary to formally
adjudicate my brother's employment claims.   Ethical
considerations dictate, therefore, that I not act as his legal
representative."  (Cassandra Menoken's letter to Robert J.
Barry, Esq., p. 2, Ex. "J" to Nolan Cert. (emphasis added)).

23

Court adjudicated all of Ms. Menoken's *pro hac vice* applications and, more than 27 weeks before trial, eventually granted Ms. Menoken permission to appear on behalf of her brother.   (<u>Menoken I</u> docket entry no. 76, Ex. "A" to Nolan Cert.)   Attorney Menoken had more than ample opportunity to move this Court for her admission *pro hac vice* and, well before trial, she was successful.   To the extent Attorney Menoken believed that there had been discovery abuses, she was certainly able to (and did) raise those questions with this Court in <u>Menoken I</u>.   This Court should reject Plaintiff's argument that now, more than 7 years after the fact, he should be permitted to re-litigate those *pro hac vice* admission motions.

## V.   <u>CONCLUSION</u>

For all of the reasons discussed above, this Court should grant the Stradley Defendants' Motion to Dismiss Plaintiff's

L # 637336 v.4

Amended Complaint for failure to state a claim upon which relief may be granted and dismiss with prejudice all claims against the Stradley Defendants.

Respectfully submitted,

/s/ Stephen B. Nolan
Stephen B. Nolan
Marianne Johnston
STRADLEY, RONON, STEVENS & YOUNG, LLP
Woodland Falls Corporate Park
200 Lake Drive East, Suite 100
Cherry Hill, NJ 08002
(856) 321-2400
(856) 321-2415 (fax)

Attorneys for Defendants
John J. Murphy, III, Esquire, and
Stradley, Ronon, Stevens & Young, LLP

L # 637336 v.4