IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

GIRARD MENOKEN,

       Plaintiff,

   v.

JOHN T. MCNAMARA, et al.,

       Defendants.

Civil Action
No. 07-4610 (JBS)

**OPINION**

**APPEARANCES:**

Mr. Girard Menoken
c/o Amira Menoken
824 S. 8th Street
Camden, NJ 08103
    Plaintiff pro se

Shaji M. Eapen, Esq.
MORGAN, MELHUISH & ABRUTYN,
ESQS.
651 W. Mt. Pleasant Avenue
Suite 200
Livingston, NJ 07039
    Attorney for Defendant
    John T. McNamara

Marianne Johnston, Esq.
Stephen B. Nolan, Esq.
STRADLEY, RONON, STEVENS &
YOUNG
Woodland Falls Corporate Park
200 Lake Drive East
Suite 100
Cherry Hill, NJ 08002-7098
    Attorneys for Defendants
    John J. Murphy III and
    Stradley, Ronon, Stevens &
    Young, LLP

K. Roger Plawker, Esq.
WALDER, HAYDEN & BROGAN, P.A.
5 Becker Farm Rd.
Roseland, NJ 07068-1727
    Attorney for Defendants
    Robert J. Barry, Kaufman &
    Canoles, PC and Workflow
    Management, Inc.

Elliott Abrutyn, Esq.
Shaji M. Eapen, Esq.
MORGAN, MELHUISH & ABRUTYN,
ESQS.
651 W. Mt. Pleasant Avenue
Suite 200
Livingston, NJ 07039
    Attorneys for Defendant
    Geringer & Doland, LLP

Amy G. Macinanti, Esq.
KEGEL KELIN ALMY & GRIMM LLP
24 North Lime Street
Lancaster, PA 17602
    Attorney for Defendant
    Nicholas C. Bozzi

**Simandle, District Judge:**

## I.   INTRODUCTION

This matter is before the Court on the motion to dismiss by Defendants John J. Murphy, III and Stradley, Ronon, Stevens & Young, LLP [Docket Item 10], in which Defendants Kaufman & Canoles, PC, Workflow Management, Inc., Robert J. Barry [Docket Item 11] and Nicholas C. Bozzi [Docket Item 20] join; and the motion for summary judgment by Defendants Geringer & Dolan, LLC and John T. McNamara [Docket Item 12].[1]  Plaintiff's opposition

---

[1]  The moving defendants shall be referred to collectively as "Defendants."  Although two other defendants have been named in the Amended Complaint, Delaware Valley Business Forms, Inc. and Standard Forms, Inc., it does not appear that those parties have been served. Because more than 120 days have elapsed since this action was commenced, the Court shall dismiss all claims against them, pursuant to Fed. R. Civ. P. 4(m).

The Amended Complaint also identifies two other unnamed defendants, ABC Corp. and XYZ, LLC.

> Pursuant to Federal Rule of Civil Procedure 21, "parties may be dropped ... by order of the court ... of its own initiative at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21.  District Courts in the Third Circuit have used this Rule to exclude John Doe parties from an action when appropriate. See, e.g., Hightower v. Roman, Inc., 190 F. Supp. 2d 740, 754 (D.N.J.2002); Atlantic Used Auto Parts v. City of Philadelphia, 957 F.Supp. 622, 625 (E.D. Pa. 1997) ("fictitious party names may be used 'at least until reasonable discovery permits the actual defendants to assume their places ...', however, ... '[f]ictitious names must eventually be dismissed, if discovery yields no identities.' " (citations omitted)).

consists of a cover letter and the brief his attorney filed in an earlier related action, which does not address the arguments raised in these motions [Docket Item 15].  Thus, the motions are essentially unopposed.[2]  Nevertheless, the Court has analyzed the legal bases for the requested relief and, for the reasons explained below, the Court shall grant the motions to dismiss and for summary judgment.

## II.  BACKGROUND

This case has an extensive history stretching back more than twelve years.  The issues alleged in the present action are integrally related to a federal proceeding filed in this Court in

---

Adams v. City of Camden, 461 F. Supp. 2d 263, 271 (D.N.J. 2006).  Because the protracted litigation of this matter - extending back more than twelve years - has failed to yield the identity of any such unknown parties, the Court shall dismiss them pursuant to Rule 21.

Of course this is merely a technical way of dismissing these non-moving Defendants from this action.  It is clear, as explained infra, that all claims in this action against all defendants are time-barred.

[2]  Plaintiff's cover letter requests sixty days to find a lawyer to represent him.  More than sixty days have passed and no attorney has entered an appearance, nor has Plaintiff filed a motion for pro bono counsel.  Additionally, although Plaintiff files his action pro se, and no attorney has signed the Amended Complaint he filed in this matter, it is clear to the Court that an attorney drafted the Amended Complaint.  In this District, such undisclosed assistance is impermissible and an attorney who assists a litigant without disclosing that assistance violates the attorney's ethical obligations.  Delso v. Trustees For Retirement Plan For Hourly Employees of Merck & Co., Inc., 2007 WL 766349, at *17 (D.N.J. 2007).  Thus, although the Court shall analyze the merits of Defendants' motions, it would have been just to grant them as unopposed.

1996, captioned <u>Menoken v. Standard Forms, Inc., et al.</u>, Civil Number 96-1774 (JBS) ("<u>Menoken I</u>") and a second action filed in New Jersey Superior Court in 2002 that was removed to this Court, <u>Menoken v. McNamara</u>, Civil Number 02-3341 (JBS) ("<u>Menoken II</u>").

### A.  <u>Menoken I</u>

In 1993, Girard Menoken was employed by Delaware Valley Business Forms, Inc. ,("DVBF"), when he suffered severe injuries during a street mugging.  During his long rehabilitation, DVBF was acquired by Standard Business Forms, Inc., ("Standard Forms") in a purchase of assets on April 18, 1994.  When Menoken's therapist approved his return to work in May 1994, Standard Forms did not permit him to return because it claimed that DVBF had not identified him as an employee in the due diligence process that had preceded the sale of the assets and had not listed him as a DVBF employee who would become a Standard Forms employee on an exhibit to the Asset Purchase Agreement.

On May 26, 1994, Menoken's sister, Cassandra Menoken, who was an Equal Employment Opportunity Commission (EEOC) staff attorney, wrote a letter to Standard Forms demanding that it allow Menoken to return to work.  After some negotiation, Menoken returned to work on May 30, 1995.  Until August 1995, Menoken's work was satisfactory.  Then, his attendance deteriorated. Standard Forms first warned Menoken of the effect of his absences, later suspended him for them, then hired a doctor to

assess his condition, then offered him a modified work schedule that he refused, and finally terminated him on May 10, 1996.

On May 15, 1996, Menoken filed suit in the United States District Court for the District of New Jersey. With the amendments to his Complaint from April 1997, Menoken's action in Menoken I was against Standard Forms, DVBF, Nicolas C. Bozzi, president of DVBF, and Pemcor, Inc., asserting claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

There was extensive discovery and motion practice. Mr. Menoken was originally pro se but was represented by different attorneys at various stages of the litigation. Eventually this Court granted leave for his sister, Cassandra Menoken, Esquire, to represent him, whereby this Court took the highly unusual step of waiving the rule requiring local counsel under Local Civ. R. 101.1(c)(3). The Court also permitted Ms. Menoken to reargue any issues that had been decided prior to her entry into the case, again relieving plaintiff from the constraints of the reconsideration rule, Local Civ. R. 7.1(g) (requiring motions for reargument to be filed within 10 days after entry of the order at issue). All of Menoken's claims except one were eventually dismissed on summary judgment. The remaining claim was against Standard Forms for breach of the FMLA.

After a bench trial, this Court found that Standard Forms had breached the FMLA, but that its breach was in good faith. Therefore, Menoken was not awarded liquidated damages, reinstatement, or front pay, but he was awarded $27,200 in lost wages and benefits for the period between May 26, 1994 when he demanded reinstatement and May 30, 1995 when he was hired by Standard Forms.

Menoken filed an appeal with the United States Court of Appeals for the Third Circuit on July 13, 2000 and Standard Forms filed a cross-appeal on July 24, 2000.  On August 30, 2001, the Third Circuit affirmed all rulings of this Court in <u>Menoken I</u> that Menoken appealed but reversed this Court's finding of FMLA liability against Standard Forms.  <u>See</u> <u>Menoken v. Standard Forms Inc.</u>, 275 F.3d 36 (3d Cir. 2001) (decision without published opinion).  Thus, Plaintiff prevailed on none of his claims and the final judgment was entered after remand on November 2, 2001.

### B.  <u>Menoken II</u>

On June 10, 2002, Plaintiff Menoken filed a second action in New Jersey Superior Court, Law Division, in Bergen County, ("<u>Menoken II</u>"), alleging tortious interference with prospective economic advantage and fraudulent concealment of material evidence.

All defendants in <u>Menoken II</u> were involved in <u>Menoken I</u> as either defendants or defense counsel.  Pemcor, Inc. was the only

defendant from Menoken I who was not included as a defendant in Menoken II.  Pemcor, Inc. however, had become DVBF before the events of Menoken I.

In Menoken's complaint in Menoken II, he alleged tortious interference with prospective economic advantage and fraudulent concealment of material evidence based on events that allegedly occurred during the proceeding in Menoken I.  Menoken claimed that the defendants "maliciously pursued and/or permitted a pattern of misconduct designed to thwart plaintiff's efforts to get to trial."  The pattern included alleged fraudulent concealment of evidence during discovery requests and opposition to a motion for his sister to appear pro hac vice.  Menoken claimed that the defendants knew that it was probable that Plaintiff would be awarded damages if he proceeded to trial, so they undertook their actions in an attempt to interfere with such prospective economic advantage.  He claimed that if he "had successfully tried his employment claims to a jury, he would have been entitled to lost wages, compensatory damages and punitive damages that would have exceeded $300,000."

Defendants filed a Notice of Removal with this Court on July 12, 2002, stating that this Court had subject matter jurisdiction in the form of federal question jurisdiction under 28 U.S.C. § 1331 because plaintiff's claims would require "substantial interpretation and application of federal law."

This Court requested briefing on the issue of subject matter jurisdiction, heard argument from the parties, and ruled that it had removal jurisdiction over the case because it had federal question jurisdiction under 28 U.S.C. § 1331.  On October 9, 2002, despite this Court's finding of subject matter jurisdiction, plaintiff filed a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41, stating that he did "not have the financial resources to prosecute this matter through an appeal."

On January 16, 2003, Plaintiff filed a motion in the closed case, pursuant to Fed. R. Civ. P. 60(b)(4), (5) and (6), for relief from the September 26, 2002 order, arguing that an intervening decision from the U.S. Supreme Court rendered invalid the Court's assertion of jurisdiction under the removal statute. On February 26, 2003, this Court held the motion to be procedurally flawed but found, nevertheless, that this Court's earlier decision on federal subject matter jurisdiction over Plaintiff's case remained valid.  Menoken v. McNamara, 213 F.R.D. 193 (D.N.J. 2003).  Plaintiff filed an appeal, which the Third Circuit dismissed for lack of appellate jurisdiction.  Menoken v. McNamara, 88 Fed. Appx. 550 (3d Cir. 2004) (unpublished).

More than two years later, Plaintiff moved this Court on March 7, 2005 to vacate his voluntary dismissal in Menoken II. The Court received briefing from the parties on this issue and on October 28, 2005 denied the motion to reinstate the case.

8

Plaintiff did not seek reconsideration nor did he appeal that decision.

### C. __Menoken III__

Instead, almost two years later, on August 13, 2007, Plaintiff filed the present action in the Law Division of the Superior Court of New Jersey for Camden County.  The Amended Complaint in Menoken III names the same parties and makes allegations identical in all material respects to those in Menoken II.

Defendants timely removed Menoken III to this Court on September 26, 2007.  For the reasons explained in Menoken v. McNamara, 213 F.R.D. 193 (D.N.J. 2003), this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## III. ANALYSIS

### A. Motion to Dismiss for Failure to State a Claim

#### 1. Standard

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Phillips v. County of Allegheny, ___ F.3d ___ , No. 06-2869, slip op. at 15 (3d Cir. Feb. 5, 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d

Cir. 2002)).

> While Rule 12(b)(6) does not permit dismissal
> of a well-pleaded complaint simply because "it
> strikes a savvy judge that actual proof of
> those facts is improbable," the "[f]actual
> allegations must be enough to raise a right to
> relief above the speculative level."

Phillips, slip op. at 17.  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Twombly, 127 S. Ct. at 1965).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, ____ U.S. ____ , 127 S. Ct. 1955, 1964-1965 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> "[S]tating . . . a claim requires a complaint
> with enough factual matter (taken as true) to
> suggest" the required element. [Twombly, 127
> S. Ct. at 1965 n.3.]  This "does not impose a
> probability requirement at the pleading stage,
> but instead "simply calls for enough facts to
> raise a reasonable expectation that discovery
> will reveal evidence of" the necessary
> element. Id.

Phillips, slip op. at 17.

Only the allegations in the complaint, matters of public
record, orders, and exhibits attached to the complaint are taken
into consideration.  Chester County Intermediate Unit v.
Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).
Without converting this motion to a motion to summary judgment,
the "court may consider an undisputedly authentic document . . .
if the plaintiff's claims are based on the document."  Pension
Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d
1192, 1196 (3d Cir. 1993).

> To resolve a 12(b)(6) motion, a court may
> properly look at public records, including
> judicial proceedings, in addition to the
> allegations in the complaint.
>
> Specifically, on a motion to dismiss, we may
> take judicial notice of another court's
> opinion--not for the truth of the facts
> recited therein, but for the existence of the
> opinion, which is not subject to reasonable
> dispute over its authenticity.

Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping
Group, Ltd., 181 F.3d 410, 426-427 (3d Cir. 1999) (citations
omitted).  If a court examines the transcript of a prior
proceeding to find facts, it converts a motion to dismiss to a
motion for summary judgment.  Id. at 427 n. 7.

Although Rule 12(b)(6) does not explicitly list the statute
of limitations as a basis for granting a motion to dismiss,

> the law of this Circuit . . . permits a

11

> limitations defense to be raised by a motion
> under Rule 12(b)(6), but only if "the time
> alleged in the statement of a claim shows that
> the cause of action has not been brought
> within the statute of limitations." <u>Hanna v.
> U.S. Veterans' Admin. Hosp.</u>, 514 F.2d 1092,
> 1094 (3d Cir. 1975). "If the bar is not
> apparent on the face of the complaint, then it
> may not afford the basis for a dismissal of
> the complaint under Rule 12(b)(6)." <u>Bethel v.
> Jendoco Constr. Corp.</u>, 570 F.2d 1168, 1174 (3d
> Cir. 1978).

<u>Robinson v. Johnson</u>, 313 F.3d 128, 135 (3d Cir. 2002).

2.   <u>Statute of Limitations</u>

Defendants argue that this action can be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it alleges misconduct that occurred beyond the applicable statute of limitations. In the Amended Complaint, Plaintiff asserts claims related to "damages suffered as a result of tortious conduct that occurred during the litigation of <u>Menoken v. Standard Forms, Inc. et al.</u>, No. 1:96cv01774 (D.N.J.)," (<u>Menoken I</u>). (Am. Compl. at 1.) Plaintiff alleges that Defendants failed to turn over the Asset Purchase Agreement during discovery in <u>Menoken I</u>. Plaintiff claims that if he had seen a copy of the agreement prior to summary judgment motion practice, he would "likely" have been able to avoid adverse summary judgment decisions. (Am. Compl. ¶¶ 50-55.) Plaintiff's Amended Complaint also admits, however, that the Asset Purchase Agreement had been made available for Plaintiff's inspection during discovery. (Am. Compl. ¶¶ 40-41.) Plaintiff asserts that his sister was representing him in May of

12

1999, that she had the Asset Purchase Agreement in her possession, and that she raised with the Court the issue of whether the materials should have been turned over sooner.  (Id. at ¶¶ 59-63.)[3]

In addition, Plaintiff appears to complain about Defendants' opposition to the <u>pro hac vice</u> admission of his sister in <u>Menoken I</u>.  (Am. Compl. ¶¶ 34-36.)  The first order denying the application for <u>pro hac vice</u> admission appears to have been July 23, 1997 (Docket Item 23 in <u>Menoken I</u>) and there is no allegation of any concealment of this opposition.  Moreover, Plaintiff's allegation of harm from that conduct is that he had to proceed <u>pro se</u> through discovery.  (Am. Compl. ¶¶ 36-37.)  Thus, to the extent Plaintiff has any claim about Defendants' opposition to his sister's appearance, that claim must have accrued sometime before June 2001, when the trial began.[4]

_____

[3]  According to the record of the case, the agreement was turned over on October 15, 1998.  (Ex. C to Eapen Cert., Tr. June 12, 2000 Hr'g at 19:21-21:5.)  Plaintiff, through counsel, argued in June 2000 that it was not until October 15, 1998 time that Plaintiff became aware of the alleged concealment of which he complains again in this action filed nearly nine years later. (Id.)  Thus, upon examination of the transcript of this case, by October 1998, Plaintiff was aware of the contents of this document and the harm done by his failure to review it earlier. However, the Court shall not incorporate that finding into its analysis of the motion to dismiss as it requires the Court to go beyond the face of the Complaint.  These facts are relevant to the motion for summary judgment, discussed below.

[4]  Even if there was some allegation in the Amended Complaint of a harm that Plaintiff suffered later in the litigation, such harm could not have occurred after November 2,

The claims in the Amended Complaint  – for tortious interference with a prospective economic benefit and tortious concealment (Am. Compl. at 10-12) –  are governed by the six-year statute of limitations in N.J. Stat. Ann. § 2A:14-1.  On the face of the Amended Complaint, Plaintiff allegedly knew by May 1999 that he had suffered the injuries for which he is suing here and that those injuries were the fault of Defendants.  "[W]here a plaintiff knows of an injury and that the injury is due to the fault of another, he or she has a duty to act."  Caravaggio v. D'Agostini, 166 N.J. 237, 249-50 (2001).  "[A] claim accrues, for statute of limitations purposes, on 'the date on which the right to institute and maintain a suit first arose.'"  County of Morris v. Fauver, 153 N.J. 80, 107 (1998) (quoting Rosenau v. City of New Brunswick, 51 N.J. 130, 137 (1968)).  Thus, the claims related to alleged concealment or misrepresentation of the Asset Purchase Agreement accrued prior to May 1999.  And the claims related to opposition to the pro hac vice motions arose by, at the latest, June 2001.  Plaintiff filed this action in August 2007, thereby rendering it untimely.

Because more than six years have passed since Plaintiff knew that Defendants were allegedly undertaking the conduct complained of in the Amended Complaint, the New Jersey statute of

2001, as Plaintiff clearly alleges that all the misconduct occurred before final judgment was entered in Menoken I.

limitations bars this action.  See Jaasma v. Shell Oil Co., 412
F.3d 501, 507 (3d Cir. 2005) (district court must apply law of
the state whose law governs the action); Jewelcor Inc. v.
Karfunkel, 515 F.3d 203, 207 (3d Cir. 2008) (federal court cannot
provide tolling on state claim that it would not receive in state
court).  These claims were not tolled by Plaintiff filing and
dismissing Menoken II.  Cardio-Medical Assoc., Ltd. v.
Crozer-Chester Medical Center, 721 F.2d 68, 77 (3d Cir. 1983)
("It is a well recognized principle that a statute of limitations
is not tolled by the filing of a complaint subsequently dismissed
without prejudice.  As regards the statute of limitations, the
original complaint is treated as if it never existed.")
Accordingly, the Court shall grant the motion to dismiss the
claims against Defendants for failure to comply with the
applicable statute of limitations.  This motion is permissible
under Rule 12(b)(6) because the allegations on the face of the
Amended Complaint render the claims untimely.

    **B.   Motion for Summary Judgment**

    Defendants Geringer & Dolan, LLC and John T. McNamara also
moved for summary judgment pursuant to Fed. R. Civ. P. 56,
arguing that the record of this action shows beyond dispute that
the statute of limitations, issue and claim preclusion, the law
of the case doctrine, and the litigation privilege bar this
litigation and that, even if they did not, the claims fail as a

matter of law.   Although the Court has granted the motion to dismiss for failure to comply with the statute of limitations, the Court further finds, for the reasons explained below, that the motion for summary judgment should also be granted.[5]

     1.   Standard

Summary judgment is appropriate when the materials of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "[t]he nonmoving party's evidence 'is to

_____

[5]   The Court shall only address the statute of limitations but that should not indicate that the Court has an opinion, one way or the other, whether issue and claim preclusion, the law of the case doctrine, and the litigation privilege bar this litigation or whether the claims fail as a matter of law.  On the other hand, the Court is attempting only to deal efficiently with a case that is quite stale and to avoid ruling on matters that are unnecessary for the Court to address.

be believed, and all justified inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999)(quoting Liberty Lobby, 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995)(citations omitted). The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  However, the non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue.  Fed. R. Civ. P. 56(e).

> Although entitled to the benefit of all justifiable inferences from the evidence, the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth "specific facts showing that there is a genuine issue for trial," else summary judgment, "if appropriate," will be entered.

U.S. v. Premises Known as 717 South Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery

> and upon motion, against a party who fails to
> make a showing sufficient to establish the
> existence of an element essential to that
> party's case, and on which that party will
> bear the burden of proof at trial. In such a
> situation, there can be "no genuine issue as
> to any material fact," [because] a complete
> failure of proof concerning an essential
> element of the nonmoving party's case
> necessarily renders all other facts
> immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this

case there has been adequate discovery and notice of the basis

for this motion to permit the Court to adjudicate this motion for

summary judgment and to demand that Plaintiff come forward with

some evidence in opposition to Defendants' showing that, as

described more fully below, the statute of limitations has

expired and these claims have already been litigated.

> 2.   Undisputed Facts[6]

One of the documents Menoken sought during discovery in

Menoken I was the Asset Purchase Agreement between Delaware

Valley and Standard Forms.  Standard Forms took the position that

the document was not relevant, was confidential and was

proprietary.  Therefore, Standard Forms refused to produce a copy

during discovery, but made the Asset Purchase Agreement available

---

[6]  The facts set forth here are those taken from the record
submitted to the Court on this motion by Defendants and
summarized in their Rule 56.1 statement of undisputed facts,
which Plaintiff has not disputed.  "Under L. Civ. R. 56.1, facts
submitted in the statement of material facts which remain
uncontested by the opposing party are deemed admitted."  Hill v.
Algor, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000).

for inspection to Menoken or his attorney.

Shortly before the trial in <u>Menoken I</u>, Menoken's attorney filed a request for a case management conference with the Court to address various issues, including Standard Forms' alleged failure to produce the Asset Purchase Agreement.  On June 12, 2000, the Court heard argument from Ms. Menoken, on Plaintiff's behalf, and from Defendant McNamara, on behalf of Standard Forms. Ms. Menoken argued that the Asset Purchase Agreement was not turned over until October 15, 1998 and that it was not until that time that Plaintiff became aware that Standard Forms had allegedly misled him on the issue whether the employee list was part of the Asset Purchase Agreement.

However, the Asset Purchase Agreement was first disclosed in <u>Menoken I</u> as part of the Rule 26 voluntary disclosures and was made available to Plaintiff's counsel at the time, Mr. Eze, as early as March 31, 1997.  Standard Forms again made the Asset Purchase Agreement available to another attorney who entered the case for Plaintiff, Mr. Harvey Johnson, on October 21, 1997.  The discovery of the Asset Purchase Agreement arose in discovery disputes before the Court on April 18, 1997, September 9, 1997 and November 19, 1997.  Indeed, Ms. Menoken noted in her June 2000 argument that Plaintiff received the document on October 15, 1998.

As a result of that hearing, this Court found that Standard

Forms and McNamara acted in good faith when making the Asset
Purchase Agreement available for inspection only.  This Court
also found that Plaintiff was unharmed by the failure to receive
the Asset Purchase Agreement sooner than he did.

Plaintiff filed a second action, <u>Menoken II</u> on June 10,
2002, which he voluntarily dismissed and tried, unsuccessfully,
to reopen.  This action, <u>Menoken III</u>, asserts the exact claims
that Plaintiff asserted in <u>Menoken II</u> against substantively the
same defendants.

       3.   <u>Statute of Limitations</u>

As an alternate ground for decision, the Court shall briefly
explain why, looking also at the record, the Court must grant
summary judgment to Defendants on statute of limitations grounds.
Because the material facts lead inevitably to a finding that the
claims asserted here arose more than six years ago, the Court
must grant the motion for summary judgment on statute of
limitations grounds.  In other words, even if the Amended
Complaint did not, on its face, show that the claims are time-
barred, the Court would grant the motion for summary judgment on
statute of limitations grounds because all of the evidence before
the Court is undisputed and shows that the claims accrued more
than six years ago.

Plaintiff's Amended Complaint alleges injuries related to
Defendants' alleged failure to turn over the Asset Purchase

Agreement and alleged unlawful opposition to Plaintiff's sister's
<u>pro</u> <u>hac</u> <u>vice</u> motion in <u>Menoken I</u>.

The record shows that Plaintiff's counsel received the Asset
Purchase Agreement and knew of any alleged injury by October 15,
1998.  Thus, the statute of limitations on any claims related to
the alleged prior concealment of that document expired on October
15, 2004, well before this action was filed.

The undisputed record also shows that the claims related to
the <u>pro</u> <u>hac</u> <u>vice</u> motion are untimely. On December 6, 1999 this
Court entered an Opinion and Order in <u>Menoken I</u> admitting
Plaintiff's sister, Cassandra Menoken, <u>pro</u> <u>hac</u> <u>vice</u>.  The alleged
offending opposition to the motion to appear <u>pro</u> <u>hac</u> <u>vice</u>
occurred before then, but viewing the undisputed facts in the
light most favorable to Plaintiff, any legal claim related to
Defendants' opposition to Ms. Menoken's <u>pro</u> <u>hac</u> <u>vice</u> admission
accrued prior to December 6, 1999.  Because the opposition was
litigated openly and there is no allegation, let alone evidence,
indicating that Plaintiff was unaware of the opposition, there is
no need to toll any claim related to this opposition.  Plaintiff
continues to pursue this legal chimera[7] even though it was plain

_____

[7]  In classical mythology, a "chimera" is a "monster
represented as vomiting flames, and as having the head of a lion,
the body of a goat, and the tail of a dragon," but the word is
also used to describe a "vain, foolish, or incongruous fancy, or
creature of the imagination," and that is the sense in which the
Court uses it here.  <u>Webster's Revised Unabridged Dictionary</u>,
(1998), *available at*

that nothing these defendants did in opposing pro hac vice admission was improper, nor did it cause Plaintiff any harm; Defendants were within their rights to oppose pro hac vice admission of an out-of-state attorney who had no local counsel and who may be a witness herself in the case.  Moreover, when pro hac vice admission was granted notwithstanding those circumstances, Plaintiff received the extraordinary right to relitigate, through his new attorney, the matters he had litigated pro se after his previous attorneys withdrew.  For purposes of this statute of limitations motion, it is difficult to even suggest the date when legal "harm" occurred to Mr. Menoken, because none occurred.  But such date, at the latest, was December 1999, for the above reasons.

Therefore, assuming for purposes of this discussion that Plaintiff had a valid claim based on this conduct, such claim accrued no later than December 1999 and expired no later than December 2005.  Because this action was not filed until August 13, 2007, it is untimely and the Court must grant summary judgment to Defendants.

**IV.  CONCLUSION**

Whether the Court looks only at the Amended Complaint in this case or also at the record of this litigation, it is clear

---

http://dictionary.reference.com/browse/chimera (last visited Apr. 11, 2008).

that the claims asserted in this matter are untimely.  Therefore

the Court grants the motion to dismiss and the motion for summary

judgment for failure to comply with the applicable statute of

limitations.


**April 11, 2008**                              **s/ Jerome B. Simandle**
Date                                        Jerome B. Simandle
                                            U.S. District Judge

23